UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRENDA COLE,

                      Plaintiff,

            v.

THE LONG ISLAND RAILROAD
COMPANY,

                      Defendant.

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

18-CV-1822 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

      Plaintiff Brenda Cole brings this suit against her employer, the Long Island Railroad Company (the "LIRR"), alleging it negligently allowed her to be physically and verbally assaulted by coworkers on four occasions between 2011 and 2017. The LIRR seeks summary judgment, asserting that no reasonable jury could find it liable for Cole's injuries. Because this Court agrees with the LIRR, it hereby GRANTS the motion for summary judgment and dismisses the case.

## BACKGROUND[1]

      Cole is a Gang Foreman in the Maintenance of Equipment ("M of E") Department of the LIRR, where she has worked for over twenty-six years. *See* Cole Decl. ¶ 3. She is one of the few Black, female foremen that the LIRR employs. *Id*. at ¶ 4.

      The LIRR has "numerous rules and regulations in place which prohibit insubordinate, rude or threatening conduct between employees from occurring." *Id*. at ¶ 30. Cole reports that these policies

---

[1] The Court draws the facts cited in this opinion from the following sources: the Declaration of Plaintiff Brenda Cole ("Cole Decl."), Dkt. 53 Ex. A; the Declaration of LIRR General Foreman Mike Gerace ("Gerace Decl."), Dkt. 53 Ex. B; the Declaration of Doctor Deborah Campbell ("Campbell Decl."), Dkt. 53 Ex. C; the Declaration of LIRR Signal Foreman Vito Plaia ("Plaia Decl."), Dkt. 49; the Declaration of LIRR Assistant Manager Rose Koven ("Koven Decl."), Dkt. 44 Ex. 5; the Transcript of Cole's Deposition ("Cole Tr."), Dkt. 53 Ex. D; Cole's 56.1 Statement, Dkt. 55; the LIRR's 56.1 Statement, Dkt. 44 Ex. 4; and the exhibits attached thereto, Dkt. 44 Ex. 5–14. The facts presented are undisputed unless otherwise noted.

are not regularly enforced, *id*., which allegedly leads employees to believe they can "get away with almost any type of behavior or rule violations without the fear of appropriate discipline or consequences," Gerace Decl. ¶ 15.

Cole complains of four such incidents of purported employee misconduct, which she alleges have caused her sustained mental and physical harm.[2]

### I. The Alleged Altercations

#### A. The 2011 Altercation

The first altercation occurred on June 21, 2011, when Cole confronted train-car cleaner Carroll Carr, who refused to follow her order to clean a certain train. Cole Decl. ¶ 7; *see also* Dkt. 44 Ex. 6 (2011 Incident Report). When Cole entered the uncleaned train, Carr allegedly "ran up [to Cole] and [was] yelling and screaming at [her] to get off his train." Cole Tr. at 28:11–12. He then "chest bumped [her] so hard that it knock[ed] the radio out of [her] hand," and pushed her against a wall of the train. Cole Tr. at 28:24–25; Cole Decl. ¶ 7.

Cole reported the incident to her manager on July 14, 2011. *See* Dkt. 44 Ex. 6 (2011 Incident Report). In response, the LIRR brought disciplinary charges against Carr and held a three-day disciplinary trial, at which Cole was given the opportunity to testify. Cole Tr. at 31:7–32:13; Koven Decl. ¶ 5; *see also* Dkt. 44 Ex. 7 (2011 Notice of Disciplinary Trial). On January 12, 2012, the LIRR found Carr not guilty of the charges. Koven Decl. ¶ 6; *see also* Dkt. 44 Ex. 8 (Transcript of 2011 Disciplinary Trial). Nonetheless, the LIRR proceeded to change employee assignments so that Cole no longer worked or interacted with Carr. Cole Tr. at 38:24–25.

---

[2] Cole claims that her amended complaint "dramatically understate[s]" the harassment and abuse she faced at the LIRR, and that she in fact suffered continuous harassment. Campbell Decl. ¶¶ 10–12; Cole Decl. ¶ 27; Gerace Decl. ¶ 11. When asked during her deposition about harassment that occurred at the LIRR from 2013 to 2016, however, Cole named only the four incidents recounted in the complaint and acknowledged that she experienced no other harassment like the four incidents complained of here. *See* Cole Tr. at 26:9–27:10; Tr. 88:6–90:8. This opinion will thus consider only the four specific altercations discussed in more detail below.

Prior to this altercation, Carr had never attacked or threatened Cole. Cole Tr. at 36:10–18. Cole claims to have "heard . . talk" that other female LIRR employees have filed reports again Carr for "threatening them and jumping in [their] face[s]." *Id*. at Tr. 40:17–23. Notwithstanding this "talk," Carr had no disciplinary record of violent or abusive conduct before the altercation with Cole. Koven Decl. ¶ 15. *But see* Cole Tr. at 36:6 (Cole stated that prior to the 2011 altercation, Carr "would nitpick stuff" when assigned work by Cole).

### B. The 2013 Altercation

The second altercation occurred on March 10, 2013, when Cole instructed laborer Patrick Wisdom to wash down a train on which he had let diesel fuel overflow. Cole Decl. ¶ 8; Cole Tr. at 14:25; *id*. at 17:24–18:5; *see also* Dkt. 44 Ex. 9 (2013 Notice of Disciplinary Trial). When Cole approached Wisdom to verify that he was doing as he had been instructed, he turned the detergent hose and sprayed her in the eyes with a mix of water, cleaning fluid, and detergent. Cole Decl. ¶ 9; Cole Tr. at 16:8–11. As a result of this incident, Cole claims to suffer blurry vision and tearing. Cole Tr. at 20:12–17.

In response to this incident, on March 20, 2013, the LIRR brought disciplinary charges against Wisdom for being insubordinate to Cole. Koven Decl. ¶ 7. On July 17, 2013, Wisdom was given a nineteen-day suspension without pay for the incident. Koven Decl. ¶ 8; *see also* Dkt. 44 Ex. 10 (2013 Disciplinary Report). After this, Wisdom never attacked or threatened Cole again. Cole Tr. at 23:22–24:1. Cole asserts, however, that Wisdom continued to be insubordinate and was disciplined several times, albeit for unrelated conduct. *Id*. at Tr. 24:4–13 (noting that Wisdom was later disciplined for failing to do his work while on overtime).

3

Like Carr, Wisdom had no disciplinary record of violent or abusive conduct prior to this altercation. Koven Decl. ¶ 16.[3] Also like Carr, prior to this altercation, Wisdom had never attacked or threatened Cole. Cole Tr. at 15:3–8. Cole reports, though, that they had had "words back and forth," and that Wisdom had been insubordinate to her when she had given him a task that he did not want to do. *Id*. at 15:3–18.

### C. The 2016 Altercation

The third altercation occurred on March 3, 2016, when gang foreman Vito Plaia burst into Cole's office demanding she move a train car. Cole Decl. ¶ 13-14; Cole Tr. at 42:21–24; 45:23–25. Plaia purportedly spoke to Cole using expletives and insulting language. Cole Decl. ¶ 15-18; Cole Tr. at 45:23–25. Cole alleges that he had his finger in her face and leg upon her desk. Cole Tr. at 48:14–49:11. When Cole left the office, Plaia followed her outside, continuing to stand close to her and yell. *Id*. at Tr. 50:4–11. Plaia did not touch Cole during this interaction, but Cole asserts that he would have had she not moved away from him. *Id*. at Tr. 49:12–14. Cole reports that she felt afraid that Plaia would hurt or kill her during this confrontation. Cole Decl. ¶¶ 15–18.

Cole complained to management about this incident the same day it occurred. Koven Decl. ¶ 9. Cole's supervisor responded by calling "the cops[,] . . . diversity[,] . . . [and] everyone." Cole Tr. at 57:16–18. The LIRR's Trial Office then conducted an investigation. Koven Decl. ¶ 10; Plaia Decl. ¶ 15; Cole Tr. at 65:5–17. After interviewing Plaia, Cole, and nine others, the Trial Office concluded on July 11, 2016 that both Plaia and Cole acted unprofessionally, but there was insufficient evidence to pursue discipline against either. Koven Decl. ¶ 11; *see also* Dkt. 44 Ex. 11 (2016 Disciplinary Report). Since this incident, Plaia and Cole have not worked together and no further altercations have occurred.

---

[3] Cole asserts that Wisdom has "a long history" of disciplinary issues, but does not provide any evidence to support this assertion. Cole Decl. ¶ 10.

4

Plaia Decl. ¶¶ 13–14. Cole reports that others in Plaia's department "constantly talk[ed] about the incident," but none threatened Cole. Cole Tr. at 64:22–25.

Like Wisdom and Carr, prior to the March 3, 2016 incident, Plaia had never attacked or threatened Cole. Cole Tr. at 52:16–19. Cole stated during her deposition that she had had disagreements with Plaia prior to the 2016 altercation, but they had been resolved peacefully and never resulted in a formal complaint. Cole Tr. at 51:11–52:7; Plaia Decl. ¶ 11. Prior to the 2016 incident, Plaia had no disciplinary record, Plaia Decl. ¶ 24; Koven Decl. ¶ 17, and had never been accused of misconduct, Plaia Decl. ¶¶ 22–23; Cole Tr. at 53:3–7.

### D. The 2017 Altercation

The final altercation occurred on March 2, 2017, when Cole arrived to work and found Daniel Ribeiro parked in her parking spot. Cole Decl. ¶¶ 23–24; Dkt. 44 Ex. 13 (2017 Police Report); Dkt. 44 Ex. 14 (2017 Disciplinary Report). Because parking "is at a premium at th[at] yard," Cole asked Ribeiro to move his car. Cole Decl. ¶¶ 25–26. Ribeiro refused and began yelling at Cole, allegedly calling her by a racial epithet. *Id*. ¶ 27; Cole Tr. at 70:17–23. Ribeiro approached Cole's car and came within one foot of it. Cole Tr. at 71:1–13. He never touched Cole, who remained inside the car. *Id*. Cole asserts that she was scared to get out of her car because she feared Ribeiro. Cole Decl. ¶ 28; Cole Tr. at 71:16–20; 75:7–10. She also states that she felt trapped in her car for a portion of the interaction. Cole Tr. at 74:11–15. The confrontation ended after Cole called the police. *Id*. at Tr. 83:6–9.

The LIRR's Trial Office investigated this incident once made aware of it. Koven Decl. ¶ 14.[4] After interviewing Ribeiro, Cole, and several other witnesses, the Trial Office concluded that both Ribeiro and Cole had acted unprofessionally, but there was insufficient evidence to charge either with misconduct. Koven Decl. ¶ 14; *see also* 2017 Disciplinary Report. Although the police were called in

---

[4] Cole claims no investigation or disciplinary hearing resulted from this incident, Plaintiff's 56.1 Statement ¶ 104, but this statement is belied by her own testimony, Cole Tr. at 86:23– 87:7 (discussing in her deposition the LIRR's investigation into the Ribeiro incident).

5

connection with this incident, no police charges were filed and no one was arrested. Cole Tr. at 84:23–85:1; *see also* Dkt. 44 Ex. 12 (2017 Police Report). After this incident, Cole had no further interactions with Ribeiro. *Id*. at 86:17–22.

Having never met Ribeiro before, Cole had no negative history with him. Cole Tr. at 69:13–15. Like Carr, Wisdom, and Plaia, there is no evidence that Ribeiro had a disciplinary record of violent or abusive conduct before this incident. Koven Decl. ¶ 18.

## II. The Effects of These Altercations on Cole

Following the 2011 confrontation with Carr, Cole testified that she began to experience negative physical symptoms like decreased appetite. Cole Tr. at 100:21–101:2. She also experienced some deterioration in her mental health, for which she sought professional treatment. *Id*. at 29:23–30:4; 37:19–22. After the 2013 incident with Wisdom, Cole allegedly experienced blurry vision and tearing, for which she sought treatment from an eye doctor. *Id*. at 21:15–17. Following the 2016 confrontation with Plaia, Cole began seeing a therapist, who diagnosed her with post-traumatic stress disorder ("PTSD"), anxiety, and trauma. *Id*. at 96:12. This anxiety has purportedly caused new physical symptoms including insomnia, panic attacks, and nausea. Campbell Decl. ¶ 6; *see also* Cole Tr. at 100:20–101:4. According to Cole's doctor, although these symptoms were triggered by Cole's 2016 altercation with Plaia, they came "after years of working in a psychologically corrosive environment." Campbell Decl. ¶ 5. Cole's doctor reports that "the residua of her injuries will be lifelong notwithstanding ameliorative treatment." *Id*. ¶ 13.

## III. Procedural History

On February 28, 2020, Cole commenced this suit against the LIRR. Dkt. 1. She initially brought claims under both Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5, and the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*. *Id*. ¶¶ 13, 26. On April 19, 2020, she filed an amended complaint, dropping the Title VII claims but retaining the claims under

FELA. Dkt. 16. After completing discovery, on June 10, 2020, the LIRR filed the instant motion for summary judgment. Dkt. 44.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant may make this showing by demonstrating that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The nonmoving party, then, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (emphasis in original); *see also R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984)) ("[T]he [nonmoving] party must provide 'concrete particulars' showing that a trial is needed, and 'it is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to that motion.'" (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d. Cir. 1978)).

## DISCUSSION

**I.   Cole's Claims Stemming from Incidents Prior to 2015 Are Time-Barred**

FELA provides that "no action shall be maintained . . . unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. This three-year statute of limitations begins to run when the plaintiff discovers that harm has occurred. *Mix v. Del. & Hudson Ry.*, 345 F.3d 82, 86 (2d Cir. 2003) ("[A] FELA claim accrues once the plaintiff knows, or should have known, of both the existence and cause of his injury.").

7

As the LIRR asserts, because Cole filed her initial complaint on February 28, 2018, any claim that accrued before February 28, 2015 is time-barred. Dkt. 44 Ex. 1 (Memorandum of Law in Support of Motion for Summary Judgment) ("Def. Mem.") at 6. Cole's twofold response to this contention is unavailing.

First, Cole argues that because her complaint may be construed as a hostile workplace claim, under *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), this Court must find the harm she suffered to constitute a continuing tort, rendering even those incidents that occurred before 2015 timely. Dkt. 54 (Plaintiff's Memorandum of Law in Opposition to the Motion for Summary Judgment) ("Pl. Mem.") at 14 (citing *Morgan*, 536 U.S. at 117). Second Circuit precedent, however, dictates that the *Morgan* rule applies only to claims brought under Title VII, not FELA. *Mix*, 345 F.3d at 89 ("recogniz[ing] a distinction between Title VII and the FELA that supports applying the continuing tort doctrine [as described in *Morgan*] in certain Title VII cases, but not in FELA cases."). Because Cole has withdrawn her Title VII claims, *see* Dkt. 16 (Amended Complaint), the *Morgan* rule does not apply here.

Second, Cole contends that under the "accumulation rule," her claims concerning the 2011 and 2013 incidents are timely because the mental harm from those incidents accumulated over time, culminating in the adverse mental-health symptoms Cole experienced in 2016. Pl. Mem. at 14–15. The accumulation rule, however, only applies when the plaintiff is unaware of her injury until it accumulates. In *Urie v. Thompson*, for instance, the Supreme Court allowed an otherwise time-barred claim to go forward under an accumulation theory upon finding that the record did not reflect "that [the plaintiff] should have known he [was injured] at any earlier date." 337 U.S. 163, 170 (1949). In so doing, the Court recognized that Congress did not intend plaintiffs to be punished for "blameless ignorance" in setting a three-year statute of limitations for claims under FELA. *Id*. at 170–71. Here, by contrast, Cole acknowledges that she was aware of her injuries immediately following both the

8

2011 and the 2013 incident.  *See* Cole Tr. at 100:21–101:2 (Cole began experiencing loss of appetite after the altercation with Carr in 2011); *id*. at Tr. 29:23–30:4; 37:19–22 (Cole sought mental health treatment after the Carr incident); *see also id*. at 21:15–17 (Cole sought medical treatment immediately after the altercation with Wisdom).  Cole thus cannot demonstrate the type of "blameless ignorance" of her injuries so as to warrant application of the accumulation rule here.  *Urie*, 337 U.S. at 170.

The Court thus concludes that Cole's claims stemming from the July 14, 2011 altercation with Carr and the March 9, 2014 incident with Wisdom are untimely.  The remaining analysis will therefore focus only on the March 3, 2016 altercation with Vito Plaia and the March 2, 2017 confrontation with Daniel Ribeiro.

II.   **No Reasonable Jury Could Find that the LIRR Negligently Caused Cole's Injuries**

FELA provides that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . , for such injury or death resulting in whole or in part from the negligence of" such railroad.  45 U.S.C. § 51.  Courts employ a relaxed standard of proof for establishing negligence under FELA, requiring a plaintiff only to show "that employer negligence played any part, even the slightest, in producing the injury." *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506 (1957).  Notwithstanding this relaxed standard, foreseeability of harm remains "an essential ingredient of Federal Employers' Liability Act negligence."  *Gallick v. B & O R.R.*, 372 U.S. 108, 117 (1963).  Here, the Court finds that no reasonable jury could find Cole's harm foreseeable.  Cole therefore cannot establish liability as a matter of law.

The Second Circuit's decision in *Higgins v. Metro-North Railroad*, 318 F.3d 422 (2d Cir. 2003), is particularly instructive.  In that case, the plaintiff alleged that her co-worker had sexually harassed her on multiple occasions, and that Metro-North was liable for this harassment under FELA because it had negligently allowed the harassment to occur.  *Id*. at 423–24.  The Second Circuit upheld a grant of summary judgment to the railroad, finding the misconduct unforeseeable.  *Id*. at 427.  The

9

court acknowledged that the railroad knew that the alleged harasser had "outbursts" and "difficulty controlling his temper," and that he had previously engaged in three incidents of unwanted non-sexual touching. *Id*. Nonetheless, the Court found these incidents insufficient to establish that the railroad was aware of the "particular threat," to the plaintiff. Accordingly, it concluded that the plaintiff could not prove negligence as a matter of law, in spite of FELA's relaxed standard. *Id*. at 427–28.

The facts of the 2016 incident closely mirror those present in *Higgins*. Cole asserts that her altercation with Plaia was foreseeable because she had had conflicts with him before. Pl. Mem. at 17. Yet she acknowledges that each of these past conflicts were resolved peacefully. Cole Tr. at 51:11–52:7. And so, like in *Higgins*, the Court finds that these past conflicts were not sufficiently similar to the altercation complained of here to render the "particular threat" of the 2016 altercation foreseeable. Instead, the record reflects that prior to the March 3, 2016 altercation with Cole, Plaia had never been accused of misconduct nor disciplined by the railroad. Plaia Decl. ¶¶ 22–24; Cole Tr. at 53:3–7. Cole has presented no evidence that interactions like the one between Plaia and Cole had ever become violent before. Nothing in the record thus rendered this altercation foreseeable.

The record further indicates that the 2017 incident with Ribeiro was even less foreseeable. Cole has presented no evidence that suggests that Ribeiro had any propensity for aggression, harassment, or violence. Nor has she shown that any other parking dispute occurred at the LIRR prior to this incident. The record is devoid of evidence to establish this confrontation should have been foreseen.

Accordingly, because the record lacks evidence that these altercations were foreseeable, the Court concludes that no reasonable jury could find that the LIRR's negligence caused Cole's injuries. 45 U.S.C. § 51.[5]

---

[5] The parties also dispute whether Cole was in the "zone of danger" when she suffered emotional injuries as a result of the 2016 and 2017 altercations. *Compare* Def. Mem. at 13–14, *with* Pl. Mem. at 20. Because the Court finds Cole's injuries unforeseeable as a matter of law, it need not address this issue.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 44 and close the case.

SO ORDERED.
Dated:    March 5, 2021
           New York, New York

                                              RONNIE ABRAMS
                                              United States District Judge